UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TAMMY JO WRATH-SMITH,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No.   2:13-CV-0346-SMJ<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 16 & 21. Plaintiff Tammy Jo Wrath-Smith appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 5. Plaintiff contends the ALJ did not properly consider (1) the opinions of examining physicians regarding her psychological and mental limitations, and (2) her subjective symptom testimony. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Plaintiff's motion and grants the Commissioner's motion.

ORDER **-** 1

A. **Statement of Facts**[1]

Plaintiff has an 8th grade education and was in special education for math, reading, and science. ECF No. 13 at 25. At the time of her hearing, Plaintiff was living in her RV and immediately prior to that she had been living with friends and at a women's shelter. *Id.* at 26. Plaintiff suffers from a variety of physical ailments including back pain, asthma and other pulmonary problems, and obesity. *Id.* at 22-23. Further, Plaintiff has some mental impairments that result in mild restriction for activities of daily living and moderate difficulties with social functioning. *Id.* at 23. Though Plaintiff has worked as a fast food worker, as a chicken processing plant worker, and as a store laborer, she has not worked or sought employment since 2012. *Id.* at 26, 31.

In June 2010, psychologist Dr. Debra Brown examined Plaintiff and diagnosed her with mild retardation, among other conditions. *Id.* at 29. In February 2011, psychologist Dr. Jay Toews also examined Plaintiff and diagnosed her with borderline intellectual functioning, among other conditions. *Id.* Dr. Cynthia Collingwood examined the medical record in this case and determined that Plaintiff was capable of simple routine work. *Id.* at 131.

//

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

At her hearing, Plaintiff testified that she cannot lift more than five pounds with her right arm, no more than ten pounds with both of her arms, and that her hips or knees want to give out every once in a while. *Id.* at 26. Further, Plaintiff said that she has severe back pain that is exacerbated by even basic activities such as sitting. *Id.* at 27. Plaintiff also testified that the medication that she takes for her edema makes her go to the restroom extremely frequently. *Id.* at 26. According to her, she cannot walk long distances and that climbing stairs poses great difficulty. *Id.* Based on these contentions and the medical evidence in the record, Plaintiff believes this Court should overturn the ALJ's findings. Plaintiff did not testify as to any mental health limitations. *Id.* at 29.

**B.    Procedural History**

In July 2012, Plaintiff filed for Supplemental Security Income and Disability Insurance Benefits. She alleges her disability began August 2008. Though this is not her first application for benefits, the current claim was denied by the Social Security Administration in September 2012. Shortly thereafter, in December 2012, Plaintiff's claim was denied again on reconsideration. Plaintiff sought review. In May 2013, an ALJ denied Plaintiff's claim after a hearing. Plaintiff's subsequent request for review of the ALJ's decision was denied. Plaintiff now brings this action pursuant to 42 U.S.C. § 405(g), claiming that the ALJ's decision is based on legal error and not supported by substantial evidence.

## C.    Disability Determination

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities.  If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not, the disability claim is denied.  If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the

ORDER - 4

claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.     Standard of Review**

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The Court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ]

may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E.    Analysis**

The ALJ used the required five-step sequential framework to determine whether Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. ECF No. 13 at 22. At step two, the ALJ concluded that Plaintiff has several severe impairments as defined under the Social Security Act and Regulations. *Id.* at 22. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the requisite severity. *Id.* at 22-24. At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. *Id.* at 31-32. At step five, the ALJ found that Plaintiff, despite certain limitations, has the residual functional capacity to perform light work and is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* at 25-31.

Plaintiff believes that, in reaching this conclusion, the ALJ committed two reversible errors. First, Plaintiff claims that she is more limited from a psychological standpoint than what was determined by the ALJ, who did not

ORDER **-** 7

properly consider the opinions of Dr. Jay Toews, Dr. Debra Brown, and Dr. Cynthia Collingwood. ECF No. 16 at 11-13. Second, she argues that the ALJ did not "properly consider nor reject her symptom testimony." *Id.* at 13.

    1.    <u>Medical opinions.</u>

Plaintiff argues "that the ALJ failed to properly consider the opinions of Dr. Toews, Dr. Brown and Dr. Collingwood." ECF No. 24 at 3. Specifically, she believes that the ALJ did not support the rejection of their opinions with specific and legitimate reasons that were supported by substantial evidence in the record. The Court disagrees and finds that the ALJ met the applicable substantial evidence standard.

In Social Security cases, there are three types of medical opinions: those from treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The amount of weight afforded each type of physician varies; opinions of treating physicians is accorded greater weight than those of examining physicians, which in turn are afforded greater weight than those of non-examining physicians. *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984)). To reject an opinion of either a treating or examining physician, an ALJ must set forth "specific and legitimate reasons that are supported by substantial evidence in the record," even if the opinion is contradicted by another doctor. *Id.* at 830-31

(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). If such an opinion is not contradicted by another, then the ALJ "must provide 'clear and convincing' reasons for rejecting" it. *Id.* (citing *Pitzer*, 908 F.2d at 506)). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* (citing *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456)).

Here, Dr. Brown and Dr. Toews are examining physicians, while Dr. Collingwood is a non-examining physician. The ALJ found that the various experts disagreed as to the Plaintiff's mental abilities. Accordingly, this Court will assess the record to see if the ALJ's conclusion is supported by substantial evidence. Applying this standard involves reviewing the administrative record as a whole. *Id.* If the evidence is susceptible to more than one rational interpretation, the Court will uphold the ALJ's decision. *Id.* "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings.'" *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). This is precisely what the ALJ has done in this instance.

//

/

ORDER - 9

### a. *Medical Opinions of Dr. Toews and Dr. Brown*

Dr. Toews examined Plaintiff and diagnosed her with (1) an adjustment disorder with depressed mood and (2) borderline intellectual functioning. ECF No. 13 at 335. Part of the testing involved administering the Wechler Adult Intelligence Scale-Third Edition ("WAIS-III"), which measures the intellectual functioning in adults. Based on this test and other information, Dr. Toews found that Plaintiff "is capable of remembering multi-step and moderately detailed instructions. She is able to perform at least repetitive types of work. Work limitations are largely due to physical problems. She is capable of performing a variety of jobs consistent with physical limitations… She is competent to manage funds." *Id.*

The ALJ gave the opinion stated by Dr. Toews significant weight. *Id.* at 30. Giving due consideration to the specific results of the various tests administered by Dr. Toews and other evidence in the record, the ALJ concluded that a diagnosis of borderline intellectual functioning was correct. *Id.* at 30-31. The ALJ determined that these findings support the conclusion that Plaintiff "is capable of performing [specific vocational preparation level ("SVP")] 3 level (low-end semi-skilled) tasks [and that she] is capable of superficial contact with the general public." *Id.* at 25.

Seven months prior to Dr. Toews' examination, Dr. Brown also examined Plaintiff and also administered the WAIS-III test. This testing yielded a lower score for Plaintiff than that of Dr. Toews. And so, unlike Dr. Toews, Dr. Brown diagnosed Plaintiff with mild mental retardation and severe impairment in social, educational, and occupational functioning. *Id.* at 419. According to Dr. Brown, the effects of this diagnosis on Plaintiff's ability to work included "[d]ifficulty with short-term memory. Cognitive disability or impairment in functioning, including processing visual spatial information, difficulty understanding and using verbal information or speech, difficulty with mathematics, poor judgment, and/or muscle weakness, speech impairment, motor control." *Id.*

The ALJ found this conclusion to be flawed, stating that "Dr. Brown's opinion . . . has been carefully considered, but is not accorded significant evidentiary weight because it is not supported by appropriate longitudinal evidence documenting the requisite deficits of adaptive functioning necessary to establish mental retardation." *Id.* at 29. The ALJ then pointed to a number of different reasons contained in the record that either Dr. Brown failed to consider or that undermine her conclusion and support that of Dr. Toews. First, the ALJ reasoned that Plaintiff "successfully performed unskilled substantial gainful activity without any accommodation for several years." *Id.* Second, the ALJ also considered that Plaintiff engaged in a wide range of activities of daily living—

such as saving money for a car by donating plasma, reading a lot, working on crossword puzzles, horseback riding, going camping, among others—that are not consistent with the diagnosis. *Id.* at 29-30. Third, the ALJ found that Plaintiff did not list having mild mental retardation on any applications for Social Security disability benefits. *Id.* at 29.

This reasoning is sufficient to resolve the contradicting medical opinions in this case. Ultimately, the ALJ's finding that Plaintiff has borderline intellectual functioning but that she is capable of performing SVP 3 level tasks is supported by substantial evidence. The ALJ was presented differing medical diagnoses and the ALJ made credibility determinations by considering both the medical and testimonial evidence and applying them to each Doctor's opinion. In such a circumstance, the Court cannot say that the ALJ's findings are not supported by substantial evidence. Accordingly, the ALJ made no errors with the way the medical opinions of Dr. Toews and Dr. Brown were considered.

      b.    <u>*Medical Opinions of Dr. Collingwood.*</u>

Dr. Collingwood reviewed the record in this case. *Id.* at 124-134. Based on the documents that were presented her, Dr. Collingwood found that Plaintiff was capable of simple routine work due to a moderately limited ability to carry out detailed instructions, a moderately limited ability to maintain attention and concentration for extended periods, a moderately limited ability to work in

1  coordination with or in proximity to others without being distracted by them, and
2  a moderately limited ability to complete workdays and workweeks without
3  interruptions for symptoms. *Id.* at 131. The ALJ gave Dr. Collingwood's opinion
4  significant weight because it relied on a review of all the evidence in the record.
5  *Id.* at 30.

6  Plaintiff argues that the ALJ basically rejected Dr. Collingwood's opinion.
7  ECF No. 16 at 13. This is not the case. The ALJ determined that Plaintiff could
8  perform low-end semi-skilled tasks, ECF No. 13 at 25, which on its face seems
9  inconsistent with the finding by Dr. Collingwood that Plaintiff is capable of
10 simple routine work. However, in considering whether jobs that Plaintiff could
11 perform given her residual functional capacity exist in significant numbers, the
12 ALJ listed three positions that had a SVP of 2: advertising material distributor,
13 office cleaner I, and mail clerk. *Id.* at 32-33. Plaintiff's mental residual functional
14 capacity to perform simple routine work, as determined by Dr. Collingwood, has
15 been found to be generally consistent with job descriptions requiring an SVP of 2.
16 *See Lara v. Astrue*, 305 Fed. App'x 324, 326 (9th Cir. 2008); *Hackett v. Barnhart*,
17 395 F.3d 1168, 1176 (10th Cir. 2005).

18 Dr. Collingwood's opinion of Plaintiff's residual functional capacity was
19 limited to simple routine work is not inconsistent with the ALJ's finding that
20 //

ORDER **-** 13

1  Plaintiff could perform three SVP 2, unskilled jobs. Accordingly, Plaintiff's
2  contention that the ALJ basically rejected Dr. Collingwood's opinion must fail.

3      2.    <u>Symptom testimony.</u>

4  Plaintiff argues that the ALJ dismissed her testimony without sufficient
5  specificity. ECF No. 16 at 14. She contends that "the ALJ set forth a boilerplate
6  statement" and "did not state specifically why [her] testimony was not credible."
7  *Id.* The Court disagrees and finds that the ALJ satisfied the relevant legal
8  standard.

9  To weigh the credibility of subjective system testimony, the ALJ must
10  engage in a two-step inquiry. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th
11  Cir. 2007). "First, the ALJ must determine whether the claimant has presented
12  objective medical evidence of an underlying impairment 'which could reasonably
13  be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting
14  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). "Second, if the
15  claimant meets this first test, and there is no evidence of malingering, 'the ALJ
16  can reject the claimant's testimony about the severity of her symptoms only by
17  offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*
18  *v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

19  There are numerous factors that an ALJ may consider in weighing a
20  claimant's credibility. In *Lingenfelter v. Astrue*, the Ninth Circuit provided some

ORDER **-** 14

examples of acceptable points of inquiry: "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence." 504 F.3d 1028, 1040 (9th Cir. 2007). As long as the ALJ's findings are supported by substantial evidence, this Court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Here, the ALJ acknowledged that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," which satisfies step one of the inquiry. ECF No. 13 at 26. Further, the ALJ found no evidence of malingering. *Id.* Nonetheless, the ALJ ultimately concluded that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* Accordingly, this Court must assess the record and assess whether the ALJ relied on sufficient specific facts in reaching this conclusion.

Contrary to Plaintiff's assertion, the ALJ articulated specific facts that support the ALJ's finding regarding the Plaintiff's credibility. Consistent with *Lingenfelter*, the ALJ considered 1) whether the Plaintiff takes medication or receives medical treatment for her symptoms, 2) whether the alleged symptoms

ORDER **-** 15

are consistent with medical evidence, and 3) whether the Plaintiff engages in daily activities inconsistent with the alleged symptoms. Indeed, in reaching her decision, the ALJ did not make a boilerplate statement as Plaintiff alleges, and because of the numerous specific facts supporting the ALJ's decision the Court will not second-guess its validity.

The ALJ carefully considered Plaintiff's testimony that her physical ailments have resulted in total disability. ECF No. 13 at 26. First, the ALJ relied on the fact that Plaintiff has primarily sought conservative treatment for her conditions. As examples, the ALJ points out that Plaintiff has not visited specialists for treatment or received surgery to remedy the ailments and that she has primarily taken over-the-counter medication for her pain. *Id.* at 27. The Ninth Circuit has established that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Accordingly, this provides the ALJ with basis to make an adverse credibility determination.

Second, the ALJ found that Plaintiff's testimony was not supported by numerous medical reports produced by her treatment providers. ECF No. 13 at 27. Such an inquiry is permissible for weighing the credibility of the Plaintiff. As Defendant correctly points out, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical

ORDER **-** 16

evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). And so, this too is a specific fact that supports the ALJ's findings.

Third, the ALJ determined that "[t]he evidence of record reflects inconsistencies that have diminished the extent to which the claimant's subjective allegations regarding the severity of her symptoms and limitations can be considered." ECF No. 13 at 27. This determination was subsequently supported by numerous specific illustrations. For example, the ALJ found that during a doctor's visit Plaintiff "reported her back pain was exacerbated only by activities involving carrying a backpack or prolonged standing, which is in stark contrast to her testimony in which she alleged her back pain was exacerbated by even basic activities such as sitting." *Id.* This type of inconsistency has less to do with whether the extent of the debilitating condition is unsupported by medical evidence than with whether the testimony is unbelievable in general. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). By citing numerous, specific inconsistencies, the ALJ's decision further meets the controlling standard.

Finally, the ALJ discussed some inconsistencies between Plaintiff's daily life activities and the severity of the symptoms that plagued her. ECF No. 13 at 28. These contradictions—such as Plaintiff testifying that walking is her primary

mode of transportation and that she cannot walk up hills or walk for more than two blocks without stopping—provides additional support for the ALJ finding that the Plaintiff was not credible in her subjective testimony. *Id.* Indeed, the ALJ provided ample specific, clear and convincing evidence for this determination. Accordingly, the Court will not disturb the ALJ's findings.

### F.     Conclusion

In summary, the Court finds the record contains substantial evidence from which the ALJ properly concluded, when applying the correct legal standards, that Tammy Jo Wrath-Smith does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

3. **JUDGMENT** is to be entered in the Commissioner's favor.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 26th day of January 2015.

_____
SALVADOR MENDOZA, JR.
United States District Judge

Q:\SMJ\Civil\2013\Wrath-Smith v. Colvin-0346\ord.sum.judg.lc2.docx

ORDER **-** 18